J. J. NUGENT CO., A CORPORATION OF THE STATE OF NEW JERSEY AND JOHN J. DUNN CONSTRUCTION CO. A CORPORATION OF THE STATE OF NEW JERSEY, A JOINT VENTURE, PLAINTIFFS, v. ALAN SAGNER, COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF TRANSPORTATION, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided May 12, 1976.

*Mr. John C. Heavey* for plaintiffs (*Messrs. Carpenter, Bennett & Morrissey,* attorneys).

*Mr. Steven A. Tasher,* Deputy Attorney General, for defendant (*Mr. William Hyland,* Attorney General of New Jersey, attorney).

FRANCIS, A. J. S. C.   Defendant moves to transfer the venue of the within cause from Superior Court, Law Division, Atlantic County to Superior Court, Law Division, Mercer County. The underlying litigation sounds in contract. Defendant contends that *R.* 4:3–2(a)(2) governs the instant matter. It provides in pertinent part:

(a) Where Laid.  Venue shall be laid by the plaintiff in Superior Court actions as follows: * * * (2) actions not affecting real property

which are brought by or against municipal corporations, counties, public agencies or officials, in the county in which the cause of action arose . . .

Defendant is a state official and argues that such position falls within the purview of "public . . . . official".

The parties agree that the cause of action in the instant matter arose in Mercer County.

Plaintiffs contend that *R.* 4:3–2(a)(2) does not apply to actions against state officials and assert that *R.* 4:3–2(a)(3) is applicable. In pertinent part it provides:

* * * the venue in all other actions in the Superior Court shall be laid in the county in which the cause of action arose, or in which any party to the action resides at the time of its commencement, or in which the summons was served upon a nonresident defendant.

Plaintiffs submit that venue under *R.* 4:3–2(a)(3) is laid properly in Atlantic County since the residence of plaintiffs lies therein. They contend that *R.* 4:3–2(a)(2), mandating venue where the cause of action arose, is intended to apply only to those public agencies or public officials as are confined to a local presence. Plaintiffs argue that the rule drafters did not intend that the State, having a statewide presence be entitled to the benefit afforded to localized public agencies and public officials under *R.* 4:3–2(a)(2). Thus plaintiffs conclude that the venue is properly laid in Atlantic County under *R.* 4:3–2(a)(3).

Initially, the court should determine the literal effect of the words chosen by the drafters of the court rules. An enactment "must be construed according to the generally accepted meaning of its words." *Downey v. Jersey City Bd. of Ed.*, 74 *N. J. Super.* 548, 552 (App. Div. 1962). This is the rule "(u)nless there is something about the language or its effect that compels us to do otherwise * * *" *Id.* at 552. The most informative literal definition is that of "public". *Webster's New Collegiate Dictionary* (1958 ed.) defines the adjective "public" as follows:

1. Of or pertaining to the people; relating to, belonging to, or affecting a nation, *state*, or community at large; — opposed to *private*. [Emphasis applied to private in the original].

Thus the conclusion reached in a literal interpretation of *R.* 4:3–2(a)(2) is that state agencies and officials are included within public agencies or officials.

The court must now question whether there is "something about the language or its effect that compels us" to find a meaning other than the literal one. *Downey, supra* at 552. This duty remains the same whether it is a judicial or legislative enactment. To determine the drafters' interest "due regard must be had of the old law, the mischief resulting therefrom, and the enacted legislative remedy for the eradication of the evil." *Dept. of Health v. Sol Schnoll Dressed Poultry Co.,* 102 *N. J. Super.* 172, 176 (App. Div. 1968) (citations omitted). *Schnitzer & Wildstein, N. J. Rules Serv.* A IV–25, indicates that the purpose of the rule was to create an orderly apportionment of business and to restrict litigants from selecting their judge. Transitory actions at law could be tried at the discretion of the court where the cause of action arose, or where plaintiff or defendant resided at the action's commencement, or if defendant was a nonresident in the county in which process was served upon him. The practice in Chancery allowed the Chancellor to adopt rules governing venue. A Chancery Court rule in 1922 provided that venue, with certain exceptions, should be laid "in or near the locality in which the cause of action" arose. *Id.* at A IV–26. This court has looked to the cases prior to the present rule and has not located any wherein the court exercised its discretion in favor of the state because of inconvenience to that governmental entity or cost to the public. Such factors were persuasive, however, when defendant was a municipal corporation. See, *e. g., Keeley v. Belmar,* 97 *N. J. L.* 98 (Sup. Ct. 1921). Thus, the inference this court draws is that the draftsmen of *R.* 4:3–2(a)(2) were not seeking to

remedy a mischief accruing to the State by the former practice.

The court rules, and in particular $R.$ 4:3–2(a)(2), were adopted in 1949. At that time sovereign immunity still prevailed, for our Tort Claims Act, *N. J. S. A.* 59:1–1 *et seq.* and Contractual Liability Act, *N. J. S. A.* 59:13–1 *et seq.* did not become effective until 1972. Plaintiffs would submit that actions against state officers and agencies could not be within the general purview of $R.$ 4:3–2(a)(2) since such actions were unknown at the time of the rule's enactment because of the sovereign immunity doctrine. This argument is unpersuasive for two reasons. Sovereign immunity had been judicially abrogated to some extent prior to 1949. See, *e. g., Haycock v. Jannarone,* 99 *N. J. L.* 183 (E. & A. 1923) (right to compel state condemnation); *Jersey City v. Zink,* 133 *N. J. L.* 437 (E. & A. 1945) (right to restrain state from taking unconstitutional action). Legislative abrogation of immunity was also taking place in 1949. See *N. J. S. A.* 55:14H–7 (State Housing Authority's right to sue and be sued). This abrogation indicates that the drafters were cognizant of actions against state officials and agencies in 1949. Secondly, even if abrogation of immunity had not occurred in 1949, $R.$ 4:3–2(a)(2) could be given "prospective application to situations unknown or nonexistent at the time of its enactment which are within its general purview and scope where the language fairly includes them." *Safeway Trails, Inc. v. Furman,* 41 *N. J.* 467 (1964) *cert.* den., 379 *U. S.* 14, 85 S. Ct. 144, 13 *L. Ed.* 2d 84 (1964). Prospective application of $R.$ 4:3–2(a)(2) is unnecessary, for this court finds that the drafters were aware of actions against the state and determined not to limit such action solely to where the cause of action arose under $R.$ 4:3–2(a)(2). Venue was properly laid in Atlantic County under $R.$ 4:3–2(a)(3).

██ This result is supported by a rule of statutory construction commonly employed to search out the drafters' intent. The rule is not an absolute formula that is applied indiscriminately. It will not be applied to defeat the drafters'

purpose which the enactment in its entirety reveals. *Edwards v. Moonachie Mayor, etc.,* 3 *N. J.* 17, 23 (1949). The rule of construction, *ejusdem generis,* is defined in *Black's Law Dictionary* (4 ed. rev. 1968), 608 as follows:

> **Of the same kind, class or nature * * * where general words follow an enumeration of persons or things, by words of particular, and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned [citations omitted].**

See, *e. g., Salomon v. Jersey City,* 12 *N. J.* 379 (1953). Applying the maxim to *R.* 4:3–2(a)(2) it is indicated that the general words "public official" and "public agency" should not be given their broad general meaning but should be construed to embrace only public agencies and officials similar in nature to the specific government bodies listed. Such construction does not make meaningless the general words. Parking authorities (*Broadway Nat'l Bank of Bayonne v. Bayonne Parking Auth.,* 40 *N. J.* 227 (1963)) and housing authorities (*Tumully v. Jersey City,* 57 *N. J. Super.* 503 (App. Div. 1959)) have been held for certain purposes to be separate and distinct from the creating municipality. Thus, this court, in finding the general limited by the specific, finds the meaning of public officials and agencies to include such bodies and individuals who serve thereon as parking authorities, housing authorities, etc., and not the broad meaning which would include the State.

If the drafters of the court rules had intended to venue actions by or against the State only where the cause of action arose, it would have been an easy matter for them to so provide specifically. See, *State v. Kelsey,* 80 *N. J. L.* 641 (Sup. Ct. 1910).

A relaxation of the rules is permitted under *R.* 4:3–3(a)(3) and change of venue is permitted "for the convenience of parties and witnesses in the interest of justice." Defendant submits that *Engel v. Gosper,* 71 *N. J. Super.* 573

(Law Div. 1962), indicates that greater weight is to be afforded the convenience of government bodies than private litigants. This is true under the facts of that case. In *Engel,* a wrongful death and personal injury action was brought against two individuals, two teachers and two boards of education. Decedent's injury occurred in Ocean County and his death in Union County. As to the private defendants, venue was proper under *R.* 4:3–2(a)(3) in Ocean, Union or Camden (where some of the defendants resided) Counties. As to the public bodies, venue was proper where the cause of action arose under *R.* 4:3–2(a)(2). The court indicated that the injury action arose in Ocean County and the death action in Union County. Thus, the personal injury action against the boards of education would properly be venued in Ocean County and the death action against the boards of education in Union County. No severance of parties or actions was sought. The boards of education sought a change of venue from Union to Ocean County. The court noted:

Where, as in this case, two counties seem prescribed, the court must have discretionary power to determine which of them should be chosen when a dispute arises. [71 *N. J. Super.* at 581]

The court considered five factors in exercising its discretion. Greater consideration was given the boards of education than the private litigants, and the success of plaintiff's prevailing over the boards of education was considered and viewed unlikely. Thus venue was transferred to Ocean County.

The procedural situation in *Engel* is distinguishable from the instant problem, and the discretion afforded to the court is different. In *Engel* the court, faced with two venue rules, could *de novo* consider the convenience to the parties and their identities. This court views *R.* 4:3–2(a)(3) as applicable and the discretion afforded to the court as granted under Rule 4:3–3(a)(3). In *Engel* the discretionary power determined which of two venue rules to apply. In the instant matter the discretion is whether an exception to the mandated

rule should apply. Thus, the court's reasoning in *Engel* is not applicable to the instant litigation.

In addition, while courts prior to *R.* 4:3–2 had discretion in transitory law actions to change venue, the Courts indicated that they would "never change the venue upon any nice balancing of circumstances or the mere accommodation of the parties — inconvenience against inconvenience * * *." *Keeley v. Belmar, supra* 97 *N. J. L.* at 99; *Hesselbrock v. Burlington Cty.,* 111 *N. J. L.* 177 (Sup. Ct. 1933); *Demarest v. Hurd,* 46 *N. J. L.* 471 (Sup. Ct. 1884). Cost and inconvenience to the public were considered and found persuasive by the courts under the former practice. See *Keeley* and *Hesselbrock, supra.* However, this discretion was not exercised for the benefit of the municipality merely because of defendant's status, if all other factors were equal. See *N. J. Imperial Road Co. v. Gloucester Freeholders,* 80 *N. J. L.* 640 (Sup. Ct. 1910). More recently, the court in *Diodato v. Camden Cty. Park Comm'n,* 136 *N. J. Super.* 324 (App. Div. 1975), held that

> * * * while the venue provisions may be subject to change upon a showing of proper circumstances they do express strong policy considerations not to be lightly disregarded. [at 328]

No specific inconvenience to defendant has been shown. It can be assumed that plaintiffs' witnesses and records are located in Atlantic County while defendant's witnesses and records are to be found in Mercer County. The State has made no particularized statement of any inconvenience greater than that to be experienced by the plaintiffs should venue be transferred to Mercer County. When the inconveniences are equal, the fact that one party is the State and that the cost accrues to the public is not sufficient justification to depart from *R.* 4:3–2(a)(3). To do otherwise would negate the application of *R.* 4:3–2(a)(3) in every instance wherein the State was the defendant.